**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CAROLINE L. CONNOR, M.D.**, <br> Plaintiff, <br> v. <br> **UNUM LIFE INSURANCE COMPANY OF AMERICA**, <br> Defendant. | Case No. 4:19-cv-06552-YGR <br><br> **ORDER GRANTING MOTION FOR JUDGMENT** <br><br> Re: Dkt. Nos. 44, 45 |

Plaintiff Caroline L. Connor, M.D., brings this action against defendant Unum Life Insurance Company of America ("Unum") under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), challenging the denial of benefits under a long-term disability ("LTD") plan. In short, this matter turns on two issues. First, the interpretation of on one sentence in the underlying LTD plan regarding eligibility; and second, whether Dr. Connor worked at least 30 hours a week to qualify for benefits under the LTD plan. For the reasons set forth more fully below, the Court finds that Dr. Connor qualifies an eligible employee for disability benefits. Accordingly, Dr. Conner's motion for judgment is **GRANTED**.

**I.    RELEVANT BACKGROUND[1]**

Dr. Connor was formerly a practicing doctor in the Humboldt Medical Specialists ("HMS"). She previously worked for Eureka Family Practice, prior to April 2017. St. Joseph Health Medical Group purchased the practice which it then operated as HMS. In 2016, HMS bought the LTD policy at issue here. Dr. Connor worked part time in both the Eureka Family Practice, and at HMS. She was offered and accepted a "part time physician" position in this

---

[1] For the good cause shown therein, the administrative motion requesting to file select portions of the administrative record under seal (Dkt. No. 44) is **GRANTED**.

transition to HMS. Dr. Connor separately receives an individual disability insurance ("IDI") payment from The Paul Revere Life Insurance Company ("Paul Revere").

Dr. Connor bought the IDI policy in 1999 and filed a claim for residual disability benefits thereunder in January 2004 due to migraines. No one disputes that Dr. Connor suffers from a disability within the meaning of the LTD plan effective December 28, 2018. Rather, the dispute centers on whether she is an eligible employee, and even if she is, whether Dr. Connor worked 30 hours per week prior to her disability.

Dr. Connor's evidence, in summary, consists of the following:

Dr. Connor provided a declaration, under penalty of perjury, where she detailed her calculations showing that she averaged 32.5 hours per week, before inclusion of on-call hours. (AR 7472-7475.) With respect to on-call hours, she attests that she worked an average of 15 hours per week between July and December 2018 (AR 7474-7475), and provided Unum with the HMS Family Medicine Call Schedule for July to December 2018. (AR 7477-7482.)[2]

Dr. Connor's employer initially confirmed she worked at least 30 hours per week in the Employer Statement completed and signed by HMS Physician Benefits Specialist Beth Shanahan on January 18, 2019. (AR 44-46.) On the form, Ms. Shanahan wrote that Dr. Connor's regular work schedule hours were 30-32 hours per week and that Dr. Connor worked eight hours on December 27, 2018, the last day that she worked. (*Id.*) Ms. Shanahan further confirmed that Dr. Connor worked at least 30 hours a week in a February 14, 2019 telephone call. (AR 152.) As of February 14, 2019, Unum received both written and verbal confirmation from Dr. Connor's employer that she worked at least 30 hours per week; which meant she satisfied the Plan's minimum hours requirement. For an unknown reason, Unum ignored the foregoing and found instead that plaintiff was "part time" based on the language in her employment contract and did not work over 30 hours per week.

---

[2] Dr. Connor also provided the employment contract stating that she was required to be "on-call" 24 hours a day, 7 days a week, and also participate in the "call group" (AR 55), which required that she go into the office on certain weekends to provide coverage and care for patients, and make herself available by telephone, answering service and email to answer patient care questions. (AR 7474.)

2

## II. LEGAL FRAMEWORK

The parties agree that this Court should review this dispute under the *de novo* standard of review. (Dkt. No. 24 at 4.) In a *de novo* review, the Court undertakes an independent inspection of the Administrative Record without affording any deference to the plan administrator's findings. *Silver v. Executive Car Leasing LTD Plan*, 466 F.3d 727, 728 (9th Cir. 2006). When a district court reviews de novo a plan administrator's determination of a claimant's right to recover long-term disability benefits, the claimant has the burden of proving by a preponderance of the evidence that she qualifies for benefits. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

In construing the language of an ERISA-governed policy, courts apply federal common law. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002). Under that law, policy terms are interpreted in the "ordinary and popular sense as would a person of average intelligence and experience." *Id*. (quoting *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995)). In developing federal common law to govern ERISA claims, courts may "borrow from state law where appropriate, and [be] guided by the policies expressed in ERISA and other federal labor laws." *Id*. (quoting *Babikian*, 63 F.3d at 840) (alteration in original). Under California law, "if the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal.4th 645, 666-667 (1995). "This reliance on common understanding of language is bedrock." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867 (1993).

Only where a term is subject to two reasonable competing definitions after the application of these rules of interpretation will the Court apply the *contra proferentem* doctrine and interpret that term against the insurer. *Deegan v. Cont'l Cas. Co.*, 167 F.3d 502, 507 (9th Cir. 1999) (citing *Babikian*, 63 F.3d at 840). *See also Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799 (9th Cir. 1997) (Doctrine of *contra proferentem* "requires [a court] to adopt the reasonable interpretation advanced by [the plaintiff.]"); *Sony Computer*

*Entm't Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008).

### III. ANALYSIS

#### A. Relevant Language of the Plan

The plan provides coverage for:

> **ELIGIBLE GROUP(S):**
> All Full-Time Employees in **active employment** in the United States with the **Employer.**
> Temporary and seasonal workers are excluded from coverage.

(AR 103; emphasis in original.) The **bolded** language is contained in a Glossary which defines "active employment" as:

> **ACTIVE EMPLOYMENT** means you are working for your **Employer** for earnings that are paid regularly and that you are performing the **substantial and material acts** of your **usual occupation**. You must be working at least 30 hours per week.

(AR 139; emphasis in original.) Under the plan, there is no reference to "part time employee;" only, "full-time, employees" and "[t]emporary and seasonal workers." By definition, the latter are not an eligible group. The Glossary does not contain specific definitions of "full-time," "[t]emporary" or "seasonal." However, it does define "employee" as "a person who is **in active employment** with the **Employer**." (*Id.*; emphasis in the original.)

Here, the analysis turns on whether the term "full-time" has a meaning separate and apart from the characteristics describing "active employment," namely that (i) earnings are paid regularly, (ii) substantial and material performance of usual occupation, and (iii) at least 30 hours of work per week. If so, then what is the meaning? Unum's argument that "full-time" carries a separate and distinct meaning, and therefore requirement, outside of the confines of the plan ignores the full context of the Glossary definition.

According to the Merriam-Webster dictionary, the common definition of "full time" is the "amount of time considered normal or standard for working during a given period." *Full-Time*, Merriam-Webster Dictionary, *available at* <https://www.merriam-webster.com/dictionary/full-time?src=search-dict-hed> (last accessed November 23, 2020). The only numerical reference in the plan document for that consideration is "30 hours per week." That 30 hours could be sufficient to satisfy a "full-time" definition not only makes logical sense but is supported by numerous other

4

plans. *See, e.g., Campos v. Reliance Standard Life Insurance Company*, 2:15-cv-08304-ODW (GJSx), 2017 WL 1370691, at *1 (C.D. Cal. Apr. 12, 2017) ("The LTD Plan terms define 'full-time' as follows: ''Full-time' means working for you for a minimum of 30 hours during a person's regular work week.'"); *Montoya v. Reliance Standard Life Insurance Company*, Case No. 14-cv-02740-WHO, 2016 WL 5394024, at *1 (N.D. Cal. Sept. 27, 2016) (Full-time means working "for a minimum of 30 hours during a person's regular work week."); *Ruttenberg v. U.S. Life Ins. Co. in City of New York,* 413 F.3d 652, 666 (7th Cir. 2005) ("The term 'full-time' is defined to mean[ ] active work on the Participating Employer's regular work schedule for the class of employees to which you belong. The work schedule must be at least 30 hours a week.").[3]

In construing the plan, the Court gives it its plain, and explicit, meaning. Unum could have required some other number of hours, such as 40 hours per week, to define "full time." It did not. Therefore, Unum cannot now impose such a definition different than one which contradicts the explicit timing requirement referenced. Such would not be plain to a lay reader.[4] The three requirements set forth explicitly in the plan define both a full time and active employee. Unum cannot impose more.

### B. Evidence of Full Time Status

Dr. Conner's evidentiary showing, submitted under penalty of perjury, satisfies a preliminary showing that she worked at least 30 hours per week.

Unum's challenge thereto does not persuade. First, while Unum challenged the calculation, it did so generically and without any evidentiary basis. Ms. Shanahan did not submit anything *in writing*, substantiating the new, unverified estimate of weekly hours. She also failed to explain the basis for the decrease in approximate weekly hours from 30-32 hours to 19 hours.

---

[3] It is possible that in 1988 the definition may have been different leading to the result in the referenced unpublished opinion of *Nelson v. Wick Building Systems, Inc.*, 860 F.2d 1089 (9th Cir. 1988). As it is not binding, the Court finds it less persuasive here than the other cases referenced and the plain meaning of the plan itself.

[4] Notably, even Unum's Lead Disability Benefits Specialist understood the language in this manner stating ". . . the policy requires her to be working full time (at least 30 hours per week) to be eligible for coverage." (AR 7349.)

1  Further, she failed to identify the medical office manager who allegedly provided this information, and Unum never asked for the person's identity in an attempt to confirm this new information. The proffer is devoid of any objective measure of reliability and the Court discounts it in its entirety.

Next, Unum focuses on the employment contract. The Court acknowledges that the document anticipated work for only 12-15 hours per week. However, the document does not prove that only 12-15 hours per week were *actually* performed. Such evidence is hearsay when offered to prove the truth of the statements therein.

Rather than do any investigation to challenge the specific details proffered by Dr. Conner, UNUM principally attacks her credibility. It argues that she may have inflated her income representations to receive a higher IDI benefit payment from Paul Revere and it identifies a discrepancy with the amount of hours worked as submitted on the IDI form and one submitted six months later. Unum's "evidence" that Dr. Connor did not work at least 30 hours a week was based on (i) claim forms submitted in connection with her Paul Revere claim, which were at least six months old at the time of her disability (AR 14), and (ii) the unverified statement by an unidentified office manager stating that Dr. Connor worked approximately 19 hours per week. (AR 7351.) None of these arguments persuade, individually or collectively.

Accordingly, based on the administrative record submitted and the evidence therein, the Court concludes that Dr. Connor has demonstrated that she has worked at least thirty (30) hours to qualify for benefits under the LTD plan.

### IV. CONCLUSION

For the foregoing reasons, the motion for judgment is **GRANTED**. Within **fourteen (14) days**, the parties shall file a proposed form of judgment consistent with this Order.

This Order terminates Docket Numbers 44 and 45.

**IT IS SO ORDERED.**

Dated: November 24, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

6