UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINE L. CONNOR, M.D.,<br><br>    Plaintiff,<br><br>    vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Case No. 4:19-cv-06552-YGR<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 71 |

Plaintiff Caroline L. Connor, M.D., brought this action against defendant Unum Life Insurance Company of America ("Unum") under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"), challenging the denial of benefits under a long-term disability ("LTD") plan. On November 24, 2020, the Court granted Dr. Connor's motion for summary judgment against Unum, finding that Dr. Connor qualified as an eligible employee for disability benefits under the LTD plan. (Dkt. No. 56; "Summary Judgment Order.") Dr. Connor now moves for an award of attorneys' fees and costs, seeking $218,900 in attorneys' fees and $5,430.66 in costs. (Dkt. Nos. 71 and 73.) Unum opposes the motion. (Dkt. No. 72.) ("Opp.") For the reasons set forth below, the Court finds that an award of attorneys' fees and costs is appropriate. Accordingly, Dr. Connor's motion is **GRANTED IN PART**.[1]

**I.    LEGAL STANDARD**

In any action brought by a plan participant, beneficiary, or fiduciary under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (1). In interpreting this statute, the Ninth Circuit has held that a prevailing plan participant, such as Dr. Connor, should "ordinarily recover an attorney's fee unless special

---

[1] The Court assumes familiarity with the factual and procedural history of this case.

1    circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d
2    587, 589 (9th Cir. 1984) (internal quotations omitted).  Three legal standards apply to this motion.
3    First, the court must decide whether the moving party has "achieved some degree of success on
4    the merits." *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119 (9th Cir.
5    2010).  Second, with respect to determining whether to exercise its discretion to award fees, a
6    court is instructed to consider the following five factors, known as the *Hummell* factors: (i) the
7    degree of the opposing party's culpability or bad faith; (ii) the ability of the opposing party to
8    satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter
9    others from acting under similar circumstances; (iv)  whether the party requesting fees sought to
10   benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal
11   question regarding ERISA; and (v) the relative merits of the party's positions.  *Hummell v. S.E.
12   Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980).  Third, the Court must assess the reasonableness
13   of the requested fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

**II.   ANALYSIS**

   **A.   "Some Degree of Success on the Merits"**

   A plaintiff reaches "some degree of success on the merits" if the court "can fairly call the outcome of the litigation some success . . . without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)).  This is not satisfied by achieving "trivial success on the merits" or a "purely procedural victor[y] . . . ." *Id.*

   Neither party disputes that Dr. Connor achieved "some degree of success on the merits." The Court granted Dr. Connor's motion for summary judgment, finding that she qualified as an eligible employee for disability benefits.  (*See* Summary Judgment Order.)  Thus, the Court finds that Dr. Connor satisfies this requirement.

   **B.   *Hummell* Factors**

   After establishing that a moving party achieved "some success on the merits," the court must then consider the *Hummell* factors referenced above.  No single *Hummell* factor is decisive.

*Simonia,* 608 F.3d at 1122.  Various combinations of factors can support an award of fees. *Paddack v. Morris,* 783 F.2d 844, 846 (9th Cir. 1986).

### 1. *Culpability or bad faith*

While the Court found that Unum interpreted its LTD plan incorrectly, the Court does not have evidence to conclude that such interpretation rises to the level of bad faith.  *Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 774–75 (9th Cir. 1989) (explaining that a pension plan did not act in bad faith despite losing on the merits).  That said, the position Unum took in this case bordered on being objectively unreasonable.  Thus, this first factor is neutral but leans in favor of a fee award.

### 2. *Ability to Satisfy an Award*

Unum concedes its ability to satisfy a fee award.  (Opp. at 4.)  Although Unum argues that this fact alone is insufficient to support a fee award, the Ninth Circuit has suggested otherwise.  In *Smith*, the court accorded great weight to the opposing party's ability to pay, stating "based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant."  *Smith*, 746 F.2d at 590.  The Court is not aware of any special circumstances that weigh against a fee award under this factor.  Thus, Unum's conceded ability to pay weighs heavily in favor of a fee award.

### 3. *Deterrence to Others in Similar Situations*

An award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims.  *See Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).  Unum argues that a fee award is not justified as deterrence because "substantial evidence supported Unum's denial." (Opp. at 4.)  This argument ignores the fact that the Court granted Dr. Connor's motion for summary judgment, finding that Unum's denial decision was in error based on the plain language of the plan.  (*See* Summary Judgment Order.)  A fee award would thus reinforce that ERISA plan administrators must consider the plain language of their plans when deciding eligibility.  Thus, the third factor favors an award.

### 4. *Significance of Legal Issue or Benefit to Plan Participants*

A plaintiff provides a benefit to participants when their litigation "assist[s] plan fiduciaries

to some degree in their future administration of plan benefits," or clarifies the terms of the plan "by settling a disputed provision or an ambiguity." *Smith,* 746 F.2d at 590 (finding that the fourth factor weighed in favor of a fee award because the "decision clarif[ied] the terms of a plan.) Here, Dr. Connor's litigation will assist plan beneficiaries in the future because they now understand that as defined under LTD's plan, means working at least 30 hours a week satisfied the minimum requirement for coverage. Thus, the Court finds that the fourth factor weighs in favor of an award.

### 5. *Merits of the Parties' Positions*

In granting Dr. Connor's motion for summary judgment, the Court found Dr. Connor's position meritorious. (*See* Summary Judgment Order.) The Court did not find Unum's positions persuasive. (*Id.* at 6.) Thus, this final factor weighs in favor of an award.

Accordingly, because Dr. Connor obtained "some degree of success on the merits," and because plan participants should ordinarily recover attorneys' fees, a balancing of the *Hummell* factors leads the Court to find an award of fees appropriate here. Thus, Dr. Connor is entitled to fees.

### C. Reasonable Fees Consist of Reasonable Hourly Rates and Reasonable Hours Spent

Once a court finds that a party is entitled to fees, the court must consider whether the requested fees are reasonable. *Hensley*, 461 U.S at 437. The moving party "bears the burden of establishing entitlement to an award and documenting the appropriate hours expanded and hourly rates." *Id.* To calculate the appropriate award for reasonable attorneys' fees in ERISA cases, the Ninth Circuit uses a two-step lodestar/multiplier method. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Hensley* 461 U.S. at 424). First, a district court "determines the 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* Then, a multiplier may be used to make upwards or downwards adjustments of the lodestar amount. *Id.*

The burden is on the moving party to "submit evidence supporting the hours worked and the rates claimed." *Id.* After the claimant submits sufficient evidence, "the party opposing the fees has a 'burden of rebuttal that requires submission of evidence to the district court challenging

4

the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.'" *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at \*6 (quoting *Gates v. Duekmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). The opposing party meets this burden only if it makes specific objections to the requested fee. *Cancio v. Fin. Credit Network, Inc.*, No. C04-03755-TEH, 2005 WL 1629809, at \*5 (N.D. Cal. July 6, 2005) (citations omitted) "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees." *Id.* at \*3.

### 1.     *Reasonableness of Hourly Rate*

When setting a "reasonable hourly rate" the court is to consider "the experience, skill, and reputation of the attorney requesting fees." *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1171-72 (9th Cir. 1999). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Id.*

Here, Dr. Connor seeks an hourly rate of $700 for Mr. Horrow's and Mr. Calvert's work performed in 2019 and 2020, and $800 per hour for work performed in 2021. In support of Dr. Connor's request, Mr. Horrow and Mr. Calvert both submitted declarations detailing their expansive history litigating ERISA cases. They are both experienced lawyers who have litigated many ERISA cases. Mr. Horrow has been in practice for 29 years and has handled no less than 850 ERISA matters on behalf of disabled claimants. (Dkt. No. 71-1) (Michael Horrow Decl., ¶¶ 2, 11.) Mr. Calvert has been in practice for 21 years, and he too has handled hundreds of ERISA litigations. (Dkt. No. 71-2) (Scott Calvert Decl., ¶¶ 3, 8.) The Court finds the requested hourly rates of $700 for 2019 and 2020 and $800 for 2021 reasonable given Mr. Horrow's and Mr. Calvert's extensive experience in ERISA matters.

Unum challenges the requested rates, arguing that they are unreasonable because Mr. Horrow and Mr. Calvert failed to provide evidence showing that the requested rates are what other attorneys in the area would charge their paying clients. (Opp. at 7-8.)   Extrinsic evidence is only

one way in which a moving party can establish a "reasonable rate". The Ninth Circuit has made clear that a moving party can also establish a "reasonable rate" by submitting evidence of prior rate determinations in other cases and declarations by other attorneys regarding the prevailing fee. *United Steelworkers of America.,* 896 F.2d at 407. Dr. Connor did just that. Dr. Connor submitted evidence showing that Judge Bernal awarded counsel an hourly rate of $700 in 2019. (*See* Horrow Decl., ¶ 21; Calvert Decl., ¶15, Ex. O.) Further, she submitted sworn declarations by other attorneys attesting to the reasonableness of the requested fees. (Calvert Decl., Exs. H and G.) The Court finds that Dr. Connor met her burden of establishing that the requested rates are reasonable. The Court further finds that the $100 increase in fees since 2019 reasonable, considering, amongst other factors, the rising cost of litigation.

Unum has failed to rebut Dr. Connor's showing that the requested fees are reasonable. Thus, the Court awards Mr. Horrow and Mr. Calvert their requested hourly rates.

### 2. *Reasonableness of Time Spent*

After determining the "reasonable hourly rate," the Court must determine the reasonable time spent on a case. A court may award attorneys' fees only for the number of hours it concludes were reasonably spent litigating the case. "Hours that are not properly billed to one's client are also not properly billed to one's adversary . . . ." *Hensley*, 461 U.S. at 434. The court should exclude from its calculations any hours that were not "reasonably expended," including a case where the claimed hours are "excessive, redundant, or otherwise unnecessary." *Id.* In the Ninth Circuit, a district court can "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Dr. Connor seeks to recover attorneys' fees for 306.5 hours of work. Unum offers several arguments for reducing the number of hours. First, Unum argues that Dr. Connor's counsel exercised excessive billing for certain tasks. Second, Unum challenges some of the billing entries as vague, making it hard to determine what the time was expended on. Third, Unum argues that Dr. Connor's counsel performed duplicative work on the case. The Court addresses each in turn.

*a.    Excessive Billing*

**Administrative tasks:**

First, Unum argues that the Court should cut all of Mr. Horrow's 0.20 billing entries in half because Mr. Horrow allegedly exercised excessive billing when it came to completing administrative tasks such as reading emails and reviewing the Court's procedural orders. (Opp. at 10.) There is nothing in the record to show that Mr. Horrow overbilled for email correspondence and the like. Nor has Unum submitted evidence showing that such entries are unreasonable. Thus, the Court finds the amount of time expended on such tasks reasonable.

As for the issue of reviewing court orders, Unum argues that Mr. Horrow double-billed for his time when he billed 0.50 hours to reviewing Magistrate Judge Hixson's order on May 12th (Opp. at 10). The Court disagrees. A review of the docket shows that Judge Hixson issued two separate orders that day: a general order regarding the joint discovery brief and a separate discovery order. (See Dkt Nos. 33 and 36.) Unum points to no other instance of double-billing, and the Court is not aware of any. While there are other instances where counsel billed for reviewing the same order twice, the Court does not find those entries excessive because they occurred on different days. (*See, e.g.*, Decl. Horrow, Ex. F, at 2 (November 6 and November 11 entries for reviewing CMC order.)) In sum, the Court finds the time counsel spent on administrative tasks, including emails and review of court orders reasonable.

**Trial Preparation:**

Next, Unum avers that counsel exercised excessive billing when Mr. Horrow billed 17 hours for trial preparation, while Mr. Calvert billed 6.8 hours for assisting. A closer review of Mr. Horrow's billing records show that he spent 6.4 hours reviewing the pleadings and preparing for the trial. The Court cannot discern how the remaining 10.6 hours were spent because those time entries are vague. Because Mr. Horrow had been working on the case for several months, and should have already been familiar with the claim file, the Court finds 17 hours for trial preparation excessive. Thus, the Court reduces Mr. Horrow's trial preparation time by 7 hours. The Court further finds the 6.8 hours Mr. Calvert spent in preparation for trial reasonable.

7

**Federal Rule of Civil Procedure Rule 26 Conference ("Rule 26 Conference"):**

Further, Unum argues that the 4.2 hours Mr. Calvert's spent in preparation for the Rule 26 conference was excessive because Unum's counsel prepared the joint status report and the conference only lasted five minutes. Even if true, the Court finds these hours reasonable. The Court notes that the hours were billed over the course of about 2 months. Further, even if the joint conference only lasted five minutes, Dr. Connor's counsel could not have known that before the conference. Thus, the Court finds the time reasonable.

**Motion for Summary Judgment/Trial Brief:**

Next, Unum challenges the time spent on the motion for summary judgment and the reply brief. Mr. Calvert spent 53.4 hours (not including the 7.3 hours spent on the revised trial brief) on the opening brief, while Mr. Horrow spent 8.2 hours revising it. Mr. Calvert spent 39.3 hours on the reply brief, while Mr. Horrow spent 8.3 hours revising it. A closer review of Mr. Calvert's billing entries shows that roughly 15.3 hours were spent on reviewing the claim file, 13.3 hours on legal research, and 24.8 hours on drafting the opening brief. The file contained over 7,500 pages, and it appears that Mr. Calvert had not previously done a full review of the claim file prior to drafting the motion for summary judgment. In looking at the entries for the reply brief, Mr. Calvert spent 4.4 hours reviewing and analyzing Unum's opposition and 34.9 hours drafting the reply brief. The billing entries show that Mr. Calvert was the primary attorney responsible for drafting the briefs, while Mr. Horrow spent a fraction of the time revising them. Thus, the Court finds the time Mr. Horrow and Mr. Calvert spent on the initial opening brief and the reply reasonable.

Notwithstanding that, the Court reduces the 7.3 hours that Mr. Calvert spent revising the trial brief with the correct citations to the administrative record to 0.0. Unum argues that Mr. Calvert had to revise the trial brief because of an error on Mr. Calvert's part. Dr. Connor does not dispute this. The Court agrees that Unum should not have to pay for counsel's error. Thus, the Court reduces the 7.30 hours Mr. Calvert spent correcting the citations to the record to 0.00.

**Motion for Attorneys' Fees:**

Unum also argues that Mr. Calvert spent an unreasonable amount of time drafting the

8

opening and reply brief for this current motion. The Court finds Mr. Calvert's 18.4 hours spent drafting the opening brief and corresponding declarations reasonable. The Court, however, finds 21.7 hours for the reply brief excessive. The reply brief should have been a straightforward exercise, as Unum did not raise any novel or complex issues in its opposition. Thus, the Court reduces Mr. Calvert's 21.7 hours spent on the reply brief by 8 hours.

### b. Vague Billing Entries

Unum also challenges 2.9 hours of Mr. Calvert's time entries as vague. Specifically, Unum argues that the entries with language such as "reviewing near-term tasks" and "assessing impact on near-term tasks" make it impossible to determine whether the work was reasonable or necessary. This argument does not persuade. A closer look at Mr. Calvert's billing entries reveal that many of the entries specified the purpose, and related to looking into the status of the litigation and determining upcoming deadlines. For instance, the November 30, 2020 entry reads "review near-term tasks in light of recent judgment and newly calendared events." (Decl. Calvert, Ex. E at 8.) (*See also Id*. at 7; "review court order vacating trial date and assess impact on near-term tasks"; *Id.* "review status of litigation and near-term tasks related to same.) The Court finds that these entries, and similar ones, are not vague nor are they unreasonable.

### c. Duplicative Work

Mr. Horrow and Mr. Calvert billed a combined 24.4 hours for drafting the mediation brief. Unum contests these hours on the basis that Mr. Horrow's and Mr. Calvert's involvement was duplicative because both are experienced attorneys, and both did not need to work on the brief. (Opp. at 11.) The Ninth Circuit has said that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). Further, a closer look at the billing entries shows that Mr. Horrow and Mr. Calvert worked on different tasks for the mediation brief. It appears that Mr. Calvert was the primary attorney, handling the initial draft of the mediation brief, while Mr. Horrow worked on the damages portion of the brief and revisions. This division of labor reflects typical law firm practice and represents a reasonable effort to maximize efficiency. Thus, the Court finds that the time spent drafting the mediation brief was not unnecessarily duplicative or excessive.

9

### 3. *Lodestar Adjustment*

Next, a court may use a multiplier to make upward or downward adjustments of the lodestar. *Van Gerwen*, 214 F.3d at 1045. However, because the lodestar amount represents a fee that is "presumptively reasonable," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), a multiplier should be used only in the rare circumstance that the calculated amount is unreasonably low or high, as supported by specific evidence and detailed findings by the court. *Id.* The Court finds that a lodestar adjustment is not warranted in this case.

**D.     Costs**

In the Ninth Circuit, a court can award reasonable litigation out-of-pocket expenses that would normally be charged to a fee-paying client, as part of "reasonable attorney's fees" under ERISA. *See Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Redlands Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006).

Dr. Connor seeks $5,430.66 in costs for filing fees, postage, and mediation fees. Unum objects to the recovery of the $2,300 mediation fee. Dr. Connor has not provided any binding authority that mediation fees are recoverable, and mediation fees are not listed as costs allowed under this Court's Local Rule 54. Thus, the Court reduces Dr. Connor's costs by $2,300.

**E.     Summary**

In light of the above, the Court summarizes its calculations as follows:

| Name | Awarded Rate | Awarded Hours | Awarded Total |
| --- | --- | --- | --- |
| **Michael B. Horrow** | $700/ $800 | 97.1 hours<br>• 95.4 hours (2019/2020)<br>• 1.7 hours (2021) | • 95.4 x $700 (2019/2020 rate) = $66,780<br>• 1.7 x $800 (2021 rate) = $1,360<br>**Total: $68,140** |
| **Scott E. Calvert** | $700/ $800 | 187.1 hours<br>• 153.3 (2019/2020)<br>• 33.8 hours (2021) | 153.3 x $700 (2019/2020 rate) = $107,310<br>33.8 x $800 (2021 rate) = $27,040<br>**Total: $134,350** |

10

Accordingly, the Court **GRANTS IN PART** the motion for attorneys' fees, more specifically, the Court grants $202,490 in attorney fees.

### III. CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** an award of attorneys' fees in the amount of $202,490 and $3,130.66 in costs.

This Order terminates Docket Numbers 71 and 75.

**IT IS SO ORDERED.**

Dated: July 26, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**